# Supreme Court of Florida

_____

No. SC14-2195
_____

**JOSEPH B. WIGGINS**
Petitioner,

vs.

**FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR
VEHICLES**
Respondent.

[January 31, 2017]

LEWIS, J.

This case is before the Court to review the decision of the First District

Court of Appeal in Florida Department of Highway Safety & Motor Vehicles v.

Wiggins, 151 So. 3d 457 (Fla. 1st DCA 2014). Here, the First District certified a

question of great public importance, which we rephrase as follows:

> WHETHER A CIRCUIT COURT CONDUCTING FIRST-
> TIER CERTIORARI REVIEW UNDER SECTION 322.2615,
> FLORIDA STATUTES, APPLIES THE CORRECT LAW BY
> REJECTING OFFICER TESTIMONY AS COMPETENT,
> SUBSTANTIAL EVIDENCE WHEN THAT TESTIMONY IS
> CONTRARY TO VIDEO EVIDENCE.

This certified question presents a pure question of law and is, therefore, subject to de novo review. See Jackson-Shaw Co. v. Jacksonville Aviation Auth., 8 So. 3d 1076, 1084-85 (Fla. 2008). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

We answer the rephrased certified question in the affirmative and hold that in this context of section 322.2615 first-tier review, a circuit court must review and consider video evidence of the events which are of record as part of its competent, substantial evidence analysis. Further, we hold in this limited context that evidence which is totally contradicted and totally negated and refuted by video evidence of record, is not competent, substantial evidence.

**Statutory Background**

Section 322.2615, Florida Statutes, provides for the suspension of one's driving privilege for driving under the influence (DUI). Specifically, the statute authorizes a law enforcement officer to suspend one's driving privilege when that person is driving or in physical control of a vehicle and has a blood- or breath-alcohol level of .08 or higher. Alternatively, a law enforcement officer may also suspend the driving privilege of one who refuses to submit to a urine, breath, or blood-alcohol test. § 322.2615(1)(a), Fla. Stat. (2011). If the driver refuses to perform a lawfully requested urine, breath, or blood test, the officer must notify the driver that his or her license will be suspended for a year, or eighteen months if the

driver has previously had his or her license suspended for failure to submit to such tests. § 322.2615(1)(b)1.a. Section 322.2615 is to be read in pari materia with section 316.1932, Florida Department of Highway Safety & Motor Vehicles v. Hernandez, 74 So. 3d 1070, 1076 (Fla. 2011), as revised on denial of rehearing (Nov. 10, 2011), a statute which provides that the requested sobriety tests "must be incidental to a lawful arrest" and that the officer must have "reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages." § 316.1932(1)(a)1.a., Fla. Stat. (2015). Once the license is suspended, the driver may request review by the Department of Motor Safety and Vehicles (Department) through an administrative hearing before the Department within ten days after issuance of the notice of suspension. § 322.2615(1)(b)3. The statute further provides that the review hearing will essentially function as a trial before the Department:

> Such formal review hearing shall be held before a hearing officer designated by the department, and the hearing officer shall be authorized to administer oaths, examine witnesses and take testimony, receive relevant evidence, issue subpoenas for the officers and witnesses identified in documents [submitted for review], regulate the course and conduct of the hearing, question witnesses, and make a ruling on the suspension.

§ 322.2615(6)(b).

During a formal review hearing for license suspension, the hearing officer is limited to the following questions, which must be established by a preponderance of the evidence:

> 1. Whether the law enforcement officer had probable cause to believe that the person whose license was suspended was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or chemical or controlled substances.
>
> 2. Whether the person whose license was suspended refused to submit to any such test after being requested to do so by a law enforcement officer or correctional officer.
>
> 3. Whether the person whose license was suspended was told that if he or she refused to submit to such test his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months.

§ 322.2615(7)(b). The hearing officer's authorization to determine the "lawfulness of the stop" is built into the provision of the essential element of whether probable cause existed. Schwartz v. Fla. Dep't of Highway Safety & Motor Vehicles, 920 So. 2d 664, 665 (Fla. 3d DCA 2005) (quoting Fla. Dep't of Highway Safety & Motor Vehicles v. DeShong, 603 So. 2d 1349, 1351 (Fla. 2d DCA 1992)). Finally, the hearing officer's decision may be reviewed by an Article V judge or judges in a circuit court by a writ of certiorari. § 322.2615(13).

**Facts and Procedural Background**

The facts surrounding the case before us concern the stop and arrest of Joseph B. Wiggins for driving under the influence of alcohol. Because there is a

- 4 -

conflict between the facts as reported by the arresting officer and the facts as demonstrated by the real-time video evidence of the event, we will present both versions of the facts.

*Arrest Report and Testimony*

According to the oral testimony of the officer based on his report, on the night of the stop, there was no surrounding traffic. Upon his first observation of Wiggins' truck, Officer Saunders wrote in the arrest report that the vehicle "appeared to swerve from one lane to another." Both Saunders and Wiggins were driving in the same direction, but Wiggins drove in the right lane while Saunders followed in the left lane. Saunders further reported that Wiggins drifted within his lane, traveled thirty miles per hour in a forty-five mile per hour zone, and crossed over the outside lane line—nearly striking a right-side curb before swerving back into his lane. Saunders stated that, as they approached an intersection, Wiggins "braked hard for no apparent reason and then accelerated back to about 30 miles per hour," continued to drift over the line, and nearly hit the curb again. As he entered another intersection, Wiggins reportedly "braked hard again and swerved right" and almost hit the curb. Wiggins then "made a quick lane change into the left lane in front of [Saunders]" and tapped his brakes. The report further states that as they approached another traffic light, Wiggins passed the opening for a left turn lane and then slowly drifted over the line to enter the lane. Wiggins then

"made a very wide left turn and had to realign his truck as he straightened out." Believing Wiggins to be impaired, Saunders activated his emergency lights. Wiggins reportedly continued in a straight path and made a sharp right turn into a drug store parking lot. Wiggins then drove through the marked parking spaces and stopped, partially obstructing the travel lane.

Thereafter, Saunders reported that he approached Wiggins, who already had his driver's license and registration in hand, and explained the reason for the stop. Saunders noticed a strong odor of alcohol and observed that Wiggins' eyes were bloodshot and glassy. In addition, Saunders noted that "[h]is movements were slow and deliberate." When asked if he had been drinking any alcoholic beverages, Wiggins reportedly replied that he had consumed a few drinks. Wiggins was then asked to perform field sobriety exercises but refused. Saunders informed Wiggins that his refusal to participate in field sobriety exercises would be used against him in court and asked Wiggins to exit the vehicle. After Wiggins refused, Saunders advised him that he was being arrested for driving under the influence. Eventually, Saunders convinced Wiggins to exit the vehicle. Wiggins was subsequently transported to the Clay County Jail, where Saunders requested a breath test.

After his arrest, Wiggins requested a formal hearing before the Department pursuant to section 322.2615. During the hearing, Saunders acknowledged that it

was the sheriff's standing general order to also record contact with a person that an officer believes to be impaired.  However, Saunders failed to activate his body camera and microphone during his direct contact with Wiggins.  Therefore, the video recording available at the hearing was a real-time video taken from Saunders' dashboard camera with no audio.

Saunders also admitted that there were inconsistencies between his arrest report and the video.  Specifically, the report stated that Wiggins quickly changed lanes in front of Saunders, while the video indicated that Saunders was the one who had changed lanes to get behind Wiggins, and Wiggins then changed into the vacant lane.  Otherwise, Saunders continued to insist that Wiggins weaved in and out of his lane, almost hit the curb, braked erratically, and made a wide turn.

*Actual Video*

Due to the dissent's representations, we embed a copy of the actual video in this opinion.[1]  The dashboard camera on Saunders' vehicle recorded Wiggins' driving pattern from the time Saunders first saw the vehicle to the time Wiggins was stopped.  As Saunders trailed Wiggins' vehicle that night, the video showed Wiggins driving totally within the proper lines.  Wiggins did not cross any lines,

---

1. To access the <u>entire</u> real-time video of the events, <u>see</u> <u>https://efactssc-public.flcourts.org/CaseDocuments/2014/2195/DashVideo.wmv</u>  .

nor did he nearly hit the curb. Wiggins did change lanes only once in an apparent attempt to clear the lane for Saunders, but he utilized his turn signal before doing so. Wiggins then activated his turn signal to move into a left turn lane, braked in preparation to turn at a traffic light, and made a normal left turn once the traffic light turned green. As Wiggins turned left, Saunders activated his emergency lights. Upon activation of the police emergency lights, Wiggins made a normal right turn into an empty drug store parking lot. The area was dark and Wiggins came to a stop and parked in front of the building. Saunders subsequently exited his vehicle and approached Wiggins' vehicle with another officer.

Notwithstanding that the real-time video evidence totally contradicted and refuted the testimony and arrest report of Officer Saunders, the hearing officer affirmed the suspension of Wiggins' license. The dissent has attempted to incorrectly transform the appellate posture of this case into a de novo factual dispute, contrary to all concepts of appellate procedure.

**Circuit Court Opinion and Order**

Subsequent to the Department's administrative hearing decision, Wiggins filed a Petition for Writ of Certiorari in the Fourth Judicial Circuit Court pursuant to section 322.2615, Florida Statutes. The first level of review in the circuit court was limited to whether Wiggins was accorded procedural due process, whether the essential requirements of the law had been observed by the Department, and

- 8 -

whether the administrative findings and judgment of the Department were supported by competent, substantial evidence. The court recognized that, as a circuit court conducting first-tier certiorari review, it was not permitted to totally reweigh the evidence de novo. However, the court reasoned that the objectivity and neutrality of the video evidence placed the circuit court in the same position as the hearing officer when reviewing the evidence, and that as an Article V judge, the court had an obligation to review the evidence to determine whether competent, substantial evidence had been presented.

Here, the court concluded that the video evidence refuted both the arrest report and Saunders' testimony. Specifically, the court found that the vehicle in the video did <u>not</u> swerve within its lane, did <u>not</u> cross over the lane line, did <u>not</u> nearly strike the curb, nor did it brake for no reason. Furthermore, the court determined that the video depicted Wiggins intentionally changing lanes into the turn lane with proper signals and thereafter making a normal left hand turn, as opposed to making a wide turn.

Based on these clearly revealed contradictions, the circuit court concluded that the arrest report and Saunders' testimony based on that incorrect report failed to constitute competent, substantial evidence. Thus, the circuit court held it was unreasonable as a matter of law for the hearing officer to accept the report and the

- 9 -

testimony as true despite the objective and neutral images of the real-time video evidence of the event.

## First District Court of Appeal

Following the circuit court's decision, the Department sought review in the First District Court of Appeal. The district court's second-tier review of the circuit court's order was further limited to only two questions: (1) whether the circuit court afforded Wiggins procedural due process and (2) whether the circuit court applied the correct law, Wiggins, 151 So. 3d at 461-62, a principle consistently violated in the dissenting opinion.

Although the circuit court based its order on its finding that the report and the testimony which were contrary to the real-time video evidence did not amount to competent, substantial evidence, the First District concluded that the circuit court essentially reweighed the evidence and conducted a de novo review in violation of this Court's opinion in Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So. 2d 1270 (Fla. 2001). Wiggins, 151 So. 3d at 462-63. Specifically, the First District opined that Dusseau established that a circuit court is limited to a determination of whether an agency's decision was supported by competent, substantial evidence. Id. at 463. Accordingly, the district court concluded that the circuit court in the instant case should have ended its review when it found evidence in the arrest report and testimony that supported the

- 10 -

agency's decision. Id. at 464. Further, the court reasoned that the hearing officer's

factual findings should have been accorded deference because she is experienced

on such matters and heard the live testimony herself. Id. at 465.

The First District granted the Department's petition, quashed the circuit

court's order, and remanded with directions to apply the law. Id. at 471. Finally,

taking into consideration the prevalence of video evidence, the First District

certified the following question of great public importance for this Court's review:

> WHETHER A CIRCUIT COURT FAILS TO APPLY THE CORRECT
> LAW BY REJECTING AS NON-CREDIBLE THE ENTIRETY OF AN
> ARRESTING OFFICER'S TESTIMONY AND REPORT CONCERNING
> A TRAFFIC STOP, UPON WHICH THE HEARING OFFICER'S
> FACTUAL FINDINGS RELIED, BASED SOLELY ON THE CIRCUIT
> COURT'S OWN INDEPENDENT REVIEW AND ASSESSMENT OF
> EVENTS ON THE VIDEO OF A TRAFFIC STOP?

Id. at 471.

In his dissent, Judge Van Nortwick disagreed that Dusseau required a culling

through the record only for whatever facts supported the administrative hearing

order. Id. at 474 (Van Nortwick, J., dissenting). Otherwise, the competent,

substantial evidence standard would be rendered useless. Id. at 474. In the opinion

of Judge Van Nortwick, evidence that is unreliable is not competent, substantial

evidence. Id. at 476.

**Analysis**

- 11 -

As explained on numerous occasions, a circuit court conducting first-tier certiorari review of an administrative decision is limited to determining (1) whether due process was accorded, (2) whether the essential requirements of the law were observed, and (3) whether the administrative findings and judgment were supported by competent, substantial evidence.[2] Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 723 (Fla. 2012) (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995)); Broward Cty. v. G.B.V. Int'l, Ltd., 787 So. 2d 838, 843 (Fla. 2001) (quoting City of Deerfield Beach v. Vaillant, 419 So. 2d 624, 626 (Fla. 1982)).  The second-tier certiorari review is more narrowly limited to (1) whether the lower tribunal afforded procedural due process and (2) whether the lower tribunal applied the correct law.  Heggs, 658 So. 2d at 530.

---

2.  It is important to distinguish the functions of the common law writ of certiorari and first-tier certiorari review.  The common law writ of certiorari allows an upper court to direct a lower tribunal to inform the upper court of the events below in a pending case so that the upper court can review the proceedings for regularity.  Broward Cty. v. G.B.V. Int'l, Ltd., 787 So. 2d 838, 842 (Fla. 2001).  Further, "[t]he [common law] writ functions as a safety net and gives the upper court the prerogative to reach down and halt a miscarriage of justice where no other remedy exists."  Id. This discretionary common law writ is not intended to redress mere legal error, but rather to fill the gaps between direct appeal and other prerogative writs.  Id.  This Court has emphasized that the common law writ functions as an extraordinary remedy, not as a second appeal.  Id.  In contrast, first-tier certiorari review is not a discretionary writ, but a matter of right more similar to a plenary appeal.  Id. at 843.

This Court has deferred to the findings of an agency fact-finder in the context of zoning and policy determinations, as the agency fact-finder in theory has the requisite experience, skill, and perspective to adequately adjudicate specialized proceedings. See Dusseau, 794 So. 2d at 1276. In the spirit of deferring to the agency fact-finder in some special cases, this Court has further concluded that when determining whether the administrative decision was founded on competent, substantial evidence, the circuit court may only look for facts in the record that support the agency fact-finder's conclusions. See, e.g., G.B.V. Int'l, 787 So. 2d at 845 (concerning review of a zoning decision); Dusseau, 794 So. 2d at 1275-76 (also zoning); Florida Power & Light Co. v. City of Dania, 761 So. 2d 1089, 1093 (Fla. 2000) (also zoning); Educ. Dev. Ctr., Inc. v. City of W. Palm Beach Zoning Bd. of Appeals, 541 So. 2d 106, 108 (Fla. 1989) (also zoning); De Groot v. Sheffield, 95 So. 2d 912, 916 (Fla. 1957) (concerning removal of an employee of the Duval County School Board).

However, this Court and others have voiced concerns with fairness and due process specifically in the context of hearings held before Department hearing officers under section 322.2615. See, e.g., Hernandez, 74 So. 3d at 1079 (stating that a petitioner seeking review of a license suspension under section 322.2615 must be afforded reasonable notice and meaningful review of the lawfulness of the suspension); Forth v. Dep't of Highway Safety & Motor Vehicles, 148 So. 3d 781,

- 13 -

782 (Fla. 2d DCA 2014) (quashing the circuit court's decision to remand to the Department after it was found that the hearing officer was not impartial); Fla. Dep't of Highway Safety & Motor Vehicles v. Griffin, 909 So. 2d 538, 543 (Fla. 4th DCA 2005) ("While we see no constitutional infirmity in non-lawyers serving as hearing officers under section 322.2615, we do strongly caution those hearing officers that they must take extraordinary care to be as impartial and neutral as the members of the judiciary are required to be."); Fla. Dep't of Highway Safety v. Dean, 662 So. 2d 371, 373 (Fla. 5th DCA 1995), cause dismissed, 667 So. 2d 774 (Fla. 1996) ("The frequency with which conscientious trial judges of this state issue decisions that have the effect of providing more procedural safeguards to licensees in these revocation hearings suggests a continuing concern about the fairness of this statutory procedure."); Dep't of Highway Safety & Motor Vehicles v. Stewart, 625 So. 2d 123, 124 (Fla. 5th DCA 1993) (reasoning that although the procedure under section 322.2615 is expeditious and facially valid, "[l]ower courts may find, under the facts of a specific case, that a suspendee's rights have not been respected"). Today, we address those concerns.

The substance of cases that involve special issues of zoning or policy decisions greatly differ from those that involve license suspensions for DUI. A court conducting section 322.2615 first-tier certiorari review faces constitutional questions that do not normally arise in other administrative review settings. Every

- 14 -

case involving a license suspension contains a Fourth Amendment analysis of whether there was reasonable suspicion to stop the vehicle or probable cause to believe that the driver was in physical control of the vehicle while under the influence of alcohol. § 322.2615(7)(b)1. With that, first-tier review under this particular statute demands a close review of the factual record to determine whether the hearing officer's findings were supported by competent, substantial evidence and whether the essential requirements of the law were applied. Nader, 87 So. 3d at 723. Some consideration of the evidence is inescapable in the competent, substantial evidence determination. These are legal questions that call for an unbiased review, rather than being solely left to the discretion of a hearing officer who is actually employed by the Department. While a policy that provides deference to the agency fact-finder may be appropriate in special areas such as zoning or policy decisions, which involve concepts that require a certain level of expertise that can be provided by a nonlawyer, the same does not hold true for the questions of constitutional law that arise under section 322.2615. It is no wonder, then, that the Legislature created a statute to tailor review for this narrow situation.

The kind of evidence presented in the context of a license suspension hearing is also distinguishable from that presented in the context of zoning or policy decisions. With the advancement of technology, video evidence has become increasingly prevalent in the arena of law enforcement. Officers are now

equipped with dashboard and body cameras to record traffic incidents. Whereas prior to the development of this technology officers were limited to what their human memory could recall along with limited reports, an officer can now revisit the event without the distractions or stress that may arise when one is in the present moment. Unlike testimonial evidence based on a written report, the objective nature of video evidence allows it to be viewed by the Article V judicial officer on first-tier certiorari without the need for interpretations of the hearing officer.

We respect the authority and expertise of law enforcement officers, and thus rely on an officer's memory when necessary. But we would be remiss if we failed to acknowledge that at times, an officer's human recollection and report may be contrary to that which actually happened as evinced in the real time video. This is the reality of human imperfection; we cannot expect officers to retain information as if he or she were a computer. Therefore, a judge who has the benefit of reviewing objective and neutral video evidence along with officer testimony cannot be expected to ignore that video evidence simply because it totally contradicts the officer's recollection. Such a standard would produce an absurd result. Yet, the reasoning of the Department and the dissent would require exactly that.

We disagree with the First District that the circuit court's refusal to accept the officer's testimony as competent, substantial evidence constituted a reweighing

- 16 -

of the evidence. Notably, in another case involving section 322.2615 review, the First District concluded that documents that are hopelessly in conflict could not amount to competent, substantial evidence. Dep't of Highway Safety & Motor Vehicles v. Trimble, 821 So. 2d 1084, 1086 (Fla. 1st DCA 2002). Here, not only is the evidence hopelessly in conflict, but the circuit court had the benefit of having objective and neutral video evidence available for review of the actual event, as opposed to two conflicting documents that appear equally reliable. We will not ask circuit courts conducting license suspension review to ignore this benefit.

We find the dissenting opinion of Judge Van Nortwick below to be far more compatible with the law of legal review under these facts. Relying on this Court's opinion in Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1981), Judge Van Nortwick aptly pointed out that the weight and sufficiency of evidence are two separate concepts. Specifically, sufficiency tests the adequacy and credibility of the evidence, whereas weight refers to the balance of the evidence. See Wiggins, 151 So. 3d at 476 (Van Nortwick, J., dissenting). In the case before us, the officer's testimony that there was reasonable suspicion to stop Wiggins is flatly contradicted and refuted by video evidence of record. Contrary to the officer's testimony, the video indicates that Wiggins did not veer out of his lane, did not weave within his lane, did not brake erratically, did not make a wide turn, or do anything else to elicit reasonable suspicion. The Department contends that the circuit court

- 17 -

reweighed the evidence in concluding that the video refuted the testimony of the officer. We disagree. The circuit judge here did not engage in a reweighing of the evidence, but rather, determined that the contradicted testimony of the officer was not sufficient to amount to competent, substantial evidence.

Evidence that is confirmed untruthful or nonexistent is not competent, substantial evidence. Competent, substantial evidence must be reasonable and logical. Gonci v. Panelfab Prods., Inc., 179 So. 2d 856, 858 (Fla. 1965). It follows that a competent, substantial evidence analysis demands an honest look at the evidence available. Otherwise, we are asking judges to simply parrot the findings of the hearing officer, thus reducing the task of a constitutional judge to providing a predetermined stamp of approval. To hold that a judge on first-tier certiorari review must accept testimony that, as here, is clearly contradicted and totally refuted by objective video evidence, would be an injustice to Florida drivers. The law under section 322.2615 is not designed to protect the decision of the hearing officer, but to preserve due process and justice. The Legislature clearly intended that the circuit court conduct a meaningful review of the record. Whether a right or a privilege, driving is no doubt an important facet in the lives of Florida citizens. See Hernandez, 74 So. 3d at 1078 (noting that regardless of whether driving is a right or a privilege, "the loss of a driver's license is most definitely an extreme hardship"). The law is designed and intended to protect that significant interest,

- 18 -

not exploit it. Had the evidence in conflict been merely documentary or testimonial, as we often see in the context of other administrative hearings, perhaps more deference could be afforded to the hearing officer. In the context of section 322.2615 first-tier certiorari, however, objective and neutral video evidence is often available to confirm the true facts.

We do not condone drunk driving by any means, but we cannot encourage application of our laws in a manner that upholds stops without reasonable suspicion. Here, the Department asks us to stretch our imaginations to a situation where the officer would have reasonable suspicion to conduct a stop, even though there is clear, objective, neutral, and overwhelming video evidence of the opposite. This would not be a correct application of the law. Such an interpretation of the law would allow a hearing officer to arbitrarily choose evidence without an incentive to listen and evaluate for competent, substantial evidence. This would be an absurd result that we cannot support.

The dissent attempts to improperly transform the decision process and standard of review in this Court in this context into an absolute de novo factual dispute as if we were the circuit court, and we were operating above and beyond the first-tier certiorari review. This attempted transformation is a foundational flaw which causes the entire dissent to be misdirected.

It is crucial to recognize that there is a true and important distinction between the standards of review conducted by circuit courts upon first-tier certiorari review and that of district courts upon second-tier certiorari review. This Court has repeatedly explained that upon first-tier certiorari review of an administrative decision, the circuit court is limited to determining (1) whether due process was accorded, (2) whether the essential requirements of the law were observed, and (3) whether the administrative findings and judgment were supported by competent, substantial evidence. E.g., Nader, 87 So. 3d at 723 (quoting Heggs, 658 So. 2d at 530); G.B.V. Int'l, 787 So. 2d at 843 (quoting Vaillant, 419 So. 2d at 626); Dusseau, 794 So. 2d at 1274 (quoting Vaillant); Florida Power & Light, 761 So. 2d at 1092 (quoting Vaillant); Educ. Dev. Ctr., 541 So. 2d at 108 (quoting Vaillant). In presenting this three-part standard of review for the circuit court, this Court has further emphasized that "[a]s a case travels up the judicial ladder, review should consistently become narrower, not broader." Heggs, 658 So. 2d at 530 (emphasis supplied). Therefore, when conducting second-tier certiorari review, both the district court and this Court are more narrowly limited to determining whether the circuit court (1) "afforded procedural due process" and (2) "applied the correct law." Nader, 87 So. 3d at 717 (citations omitted); see also G.B.V. Int'l, 787 So. 2d at 843 (quoting Vaillant, 419 So. 2d at

626) <u>Dusseau</u>, 794 So. 2d at 1274 (quoting <u>Vaillant</u>); <u>Florida Power & Light</u>, 761 So. 2d at 1092 (quoting <u>Vaillant</u>); <u>Heggs</u>, 658 So. 2d at 530.

We have previously recognized that while both standards are similar in that they require determinations of due process and proper application of the law, a key difference between first-tier review and second-tier review lies in the competent, substantial evidence prong. <u>Florida Power & Light</u>, 761 So. 2d at 1092-93. Notably, the competent, substantial evidence prong is absent from the second-tier standard. <u>Id.</u> Upon making this observation, this Court in <u>Florida Power & Light</u> explicitly concluded that "the district court on second-tier certiorari review may <u>not</u> review the record to determine whether the agency decision is supported by competent substantial evidence." <u>Id.</u> at 1093 (emphasis in original). Here, the circuit court in the initial step of the review properly performed a competent, substantial evidence analysis and determined that the officer's testimony did not constitute competent, substantial evidence in light of the conflicting video evidence.

Notwithstanding overwhelming jurisprudence to the contrary, however, the district court below and the dissent here have attempted to incorrectly extend review to the competent, substantial evidence prong and have effectively placed themselves far above the position of a circuit court conducting first-tier review. This amounts to absolute de novo review, which necessarily violates the limited,

two-pronged standard of review required by courts conducting second-tier review. See G.B.V. Int'l, 787 So. 2d at 845 (explaining that the district court is limited to a two-pronged standard of review, not de novo review).

Additionally, with the expanded development of technology and the very concerning societal experiences, the use of and request for real-time video of government-citizen confrontational events have moved consideration beyond governmental words purporting to describe events into a broad, more accurate, fair consideration of the actual events as captured on video. Even if it were proper to become engaged in a factual dispute, which it is not on this second-tier review, the dissent would conclude that mere words of the government are sacrosanct and can be used to punish citizens even where totally contradicted by the actual facts captured on video. The dissent presents an approach which is the antithesis of a fair and reasonable system. A government system that would punish its citizens with the use of false evidence of its officers contradicted by real-time video evidence is a system in danger at best.

The legal issues presented to this Court and the district court below is whether real-time video of events can operate to render mere verbal descriptions of purported events to be not "competent, substantial" evidence when the real-time video of the events contradicts and refutes the verbal description. It must also be remembered that the government witness conveniently failed to video his actual

personal contact with the citizen in this case, contrary to the standing orders of his superiors, and the government witness also admitted that his written report from which he testified was in conflict with the real-time video of the actual events.

Accordingly, we hold that in the limited context of section 322.2615 first-tier review of a DUI license suspension, a circuit court applies the correct law by rejecting officer testimony as being competent, substantial evidence when that testimony is contrary to and refuted by objective real-time video evidence. That which is found by an Article V judge in this context to be totally refuted by objective, neutral real-time video evidence cannot be deemed competent, substantial evidence.

It is so ordered.

LABARGA, C.J., and PARIENTE, and QUINCE, JJ., and PERRY, Senior Justice, concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

I disagree with the majority in two respects. First, I disagree with the majority's interpretation of the video and its conclusion that it "flatly contradicted and refuted" Deputy Saunders' testimony. Majority op. at 17. I therefore conclude that the rephrased certified question does not accurately reflect the record before us. In my view, both Deputy Saunders' testimony and the video are competent,

substantial evidence that support the hearing officer's findings. Second, I would conclude that the circuit court went beyond the limited scope of its first-tier certiorari review, engaged in an improper reweighing of the evidence, and therefore did not apply the correct law. The First District properly recognized the flaws in the circuit court's decision. And contrary to the majority's assertions, the district court did not conduct "absolute de novo review," majority op. at 21, in violation of the standard of review applicable in second-tier certiorari reviews. Contrary to the majority's view, this is not a case in which video evidence indisputably establishes the controlling facts. Whatever the proper rule might be in such a case, in this case the district court properly recognized that the circuit court improperly reweighed the evidence presented to the trier of fact. Accordingly, I would approve the First District's decision below.

The majority states that the video shows Wiggins "driving totally within the proper lines," and not "cross[ing] any lines" or "nearly hit[ting] the curb." Majority op. at 7-8. But that is not what the video shows.[3] An accurate description of what the video shows was given by Deputy Saunders as he was being examined

_____

3. The majority also implies that Wiggins parked normally in the drug store parking lot, but the video shows that Wiggins turned and drove through one row of parking spaces and halfway through another before coming to a stop on an angle half in the parking spaces and half in the lane of traffic for the drug store. But this is irrelevant to the lawfulness of the stop because it took place after Deputy Saunders initiated the traffic stop.

by Wiggins' attorney narrating the video as it played during the administrative

hearing. The relevant portions of that exchange—beginning with Deputy Saunders

describing his first observation of Wiggins' vehicle[4]—were transcribed as follows:

Q: I saw them. Just tell me when you see something.

A: Like I said, the video doesn't always show everything I can see as far as at a distance, but he does something in his truck that causes me to think --

 . . . .

Q: Well, how far was this truck in front of you when you saw the . . . lights?

A: Yes, his -- his truck's right there. I don't even know at this point what -- if it's happened or not. I just know I saw it.

Q: It looks like it's a half a mile or so in front of you.

A: I don't know about half a mile. It's Ashton -- not Ashton Forest. It's a neighborhood a couple of hundred yards before this light.

Q: Are you increasing your speed at this point?

A: At this point you can see I've increased my speed. You can see his -- potentially his taillights. I believe there's another car and I'm trying to catch up to it.

Q: How fast are you traveling now?

A: I don't know. Like I say, he was doing 30 [mph in a 45-mph zone]. So I didn't have to go too much faster.

Q: Was that a traffic violation?

---

4. Contrary to the majority's suggestion, the video does not show Wiggins' driving pattern from the time Deputy Saunders first saw the vehicle. Initially, the vehicle was too far away to be clearly seen on the video.

. . . .

A: No. At this point it's just an observation of impairment.

Q: Observation of impairment.

A: <u>You can see him right there</u>. <u>He's over on the line, on the fog line starting at the right</u>.

Q: <u>Yeah</u>.

A: <u>He's drifting a little</u>. <u>Weaving a little bit within his lane</u>. <u>He's riding the line right now</u>. That's Long Bay right there.

Q: <u>Yeah</u>.

A: There's his brake.

Q: Okay. That's before the intersection?

A: No, that was actually at the intersection.

Q: Okay. Didn't slow his speed down. That wasn't a hard brake and a stop.

A: I didn't say he stopped.

. . . .

Q: All right. Well, go ahead and play that through and then tell me where he -- there you go.

A: See the flashing lights on Long Bay.

Q: All right.

A: And you can see he's in the intersection at the time he does it.

Q: All right. It looked like before to me, but go ahead and look. Flash comes on way before the intersection.

A: No. See we've already passed the intersection. It's a large intersection.

Q: Did he almost stop or come anywhere close to that?

- 26 -

A: I didn't say he almost stopped. I said he braked hard.

Q: Braked hard. Okay.

A: See how it's a raised concrete curb on the right.

Q: Yeah. How close is he?

A: Right now he's not close. I'm just saying that's the curb I'm talking about when we talk about it later on.

Q: Okay. There's a green light here.

A: Yeah. Then there's Palmetto.

Q: He doesn't do anything unusual or suspicious through the green light?

A: He's over almost on the curb right there.

Q: Well, the curb is right next to the white line, isn't it, where you said that?

A: Yes, sir, which would indicate --

Q: Well, that's what I'm saying. The curb --

A: He's on the white line. You asked for me to narrate. I'm narrating.

Q: Okay.

A: Right now he's riding on the white line as you can see. He's almost striking it again.

Q: Yeah.

A: Now he's drifting back over to the left.

Q: Yeah.

A: Coming off it. I believe the next light we'll come to is Everett.

Q: Okay.

A: You see <u>he's drifting further, coming back to the left a little bit more</u>.

Q: How far did he --

A: Now he's <u>going back right</u>.

Q: How far did he drift?

A: I have no idea. I don't have a ruler out there on him. But as you can see <u>he's</u> --

Q: Yeah.

A: -- <u>up over by the curb again</u>. Now he's braking again.

Q: <u>Yeah</u>.

A: <u>He's back on the line</u>. <u>This is where he almost strikes the curb on the opposite side</u>. It's sticking out a little bit. Now he's come back over. <u>Now he's actually over the line</u>. Now he's coming back over it. This is where my mistake is. I actually changed behind him, getting ready to do a traffic stop, and then he actually switches over.
This is the 2600 block of Blanding. He's going to make a left turn at the next light.

Q: Any weaving that we've seen the last quarter of mile that he's being [sic] driving?

A: I don't know the distance but yes, <u>you can see a little bit there</u>. <u>He's weaving a little bit</u>.

(Emphasis added.)

Based upon the testimony and evidentiary record that included the video, the

hearing officer made the following findings of fact:

On August 19, 2011, at approximately 2:10 a.m. Deputy J.C. Saunders of the Clay County Sheriff's Office observed a vehicle swerving within the lane, almost striking the right side curb on several occasions, and then braking erratically for no apparent reason. He also paced the vehicle and determined that it was traveling 30 MPH in

- 28 -

a 45-MPH zone.  Suspecting that the driver might be impaired, Deputy Saunders conducted a traffic stop.

As a result, the hearing officer concluded that the stop was lawful because Deputy Saunders had a reasonable suspicion that Wiggins was driving while impaired.

What Deputy Saunders described in his narration can be seen on the video. Wiggins was not driving within the proper lines but was repeatedly driving on or over the fog line, nearly hit the curb on multiple occasions, and was drifting within his lane.  The video shows that Deputy Saunders observed this driving pattern for several minutes before initiating a traffic stop.  The video also clearly shows that just prior to the initiation of the traffic stop, Wiggins passed an opening for a left-turn lane and then slowly drifted over a solid white line into the turn lane before turning left.  Additionally, Deputy Saunders testified and wrote in his report that Wiggins was driving 30 mph in a 45-mph zone and that these observations occurred at approximately 2:10 a.m.  Under the totality of the circumstances, Deputy Saunders had a well-founded suspicion that Wiggins was impaired—as the hearing officer concluded—and the video, report, and testimony provide competent, substantial evidence to support this conclusion.

The majority criticizes this conclusion, asserting that "when conducting second-tier certiorari review, both the district court and this Court are more narrowly limited to determining whether the circuit court (1) 'afforded procedural due process' and (2) 'applied the correct law.' "  Majority op. at 20.  The majority

- 29 -

cites <u>Florida Power & Light Co. v. City of Dania</u>, 761 So. 2d 1089 (Fla. 2000), for the proposition that a court conducting "second-tier certiorari review may <u>not</u> review the record to determine whether the agency decision is supported by competent substantial evidence." Majority op. at 21 (quoting <u>Florida Power & Light</u>, 761 So. 2d at 1093). But the majority itself has conducted just such a review of the record in support of its own analysis. Although the majority states that the "certified question presents a pure question of law," majority op. at 2, it nonetheless disputes the factual findings made by the hearing officer and conducts its own "de novo" review of the facts based on its interpretation of the "actual video," <u>see</u> majority op. at 7-8. The majority correctly recognizes that "[s]ome consideration of the evidence is inescapable in the competent, substantial evidence determination" by the circuit court on first-tier certiorari review. Majority op. at 15. Similarly, "[s]ome consideration of the evidence is inescapable" on second tier-certiorari review to determine whether the circuit court applied the correct law. That does not mean that the court on second-tier certiorari review makes an independent de novo decision concerning the hearing officer's ruling.

I would also conclude that the circuit court engaged in an improper reweighing of the evidence in determining that the video contradicts Deputy Saunders' report and testimony and therefore did not apply the correct law. The majority defends the circuit court's action, stating that because "sufficiency tests

- 30 -

the adequacy and credibility of the evidence, whereas weight refers to the balance

of the evidence," majority op. at 17, the circuit court "did not engage in a

reweighing of the evidence, but rather, determined that the contradicted testimony

of [Deputy Saunders] was not sufficient to amount to competent, substantial

evidence," majority op. at 18. I disagree.

This Court has said:

The "weight of the evidence" is the "balance or preponderance of evidence." Black's Law Dictionary 1429 (5th ed. 1979). It is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other. See In re Estate of Brackett, 109 So. 2d 375 (Fla. 2d DCA 1959).
　　As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment. Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.

Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1981) (footnotes omitted), aff'd, 457

U.S. 31 (1982). In affirming Tibbs, the United States Supreme Court stated, "A

reversal based on the weight of the evidence . . . draws the appellate court into

questions of credibility." Tibbs v. Florida, 457 U.S. 31, 37 (1982). Here, the

circuit court stated that "the arrest and booking report and testimony by Deputy

Sanders [sic] would support the findings of the hearing officer." But in

discrediting Deputy Saunders' testimony based on its own interpretation of what the video shows, the circuit court improperly reweighed the evidence.

In Dusseau v. Metropolitan Dade County Board of County Commissioners, 794 So. 2d 1270, 1275 (Fla. 2001), we described the circuit court's erroneous approach in conducting first-tier certiorari review as follows:

> Although the circuit court phrased its reversal in terms of "competent substantial evidence," the plain language of its order shows that the court in fact reweighed the evidence, at length. Instead of simply reviewing the Commission's decision to determine whether it was supported by competent substantial evidence, the court also reviewed the decision to determine whether it was opposed by competent substantial evidence. The circuit court then substituted its judgment for that of the Commission as to the relative weight of the conflicting evidence. The circuit court thus usurped the fact-finding authority of the agency.

The circuit court here took the same erroneous approach. Instead of simply determining whether there was competent, substantial evidence in the record to support the hearing officer's conclusion that the stop of Wiggins was lawful—which the circuit court conceded that Deputy Saunders' testimony and report provided—the circuit court applied the wrong law, incorrectly concluded that the video conflicted with Deputy Saunders' testimony and report, and substituted its judgment for that of the hearing officer as to the relative weight of the supposedly conflicting evidence.

The majority has now decided that Dusseau should not be applied to courts conducting first-tier certiorari review of administrative license suspensions because

- 32 -

section 322.2615 requires a determination of the lawfulness of the stop under the Fourth Amendment, which, the majority asserts, raises "legal questions that call for an unbiased review, rather than solely left to the discretion of a hearing officer who is actually employed by the Department" and "which involve[s] concepts that require a certain level of expertise that can be provided by a nonlawyer, the same does not hold true for the questions of constitutional law that arise under section 322.2615." Majority op. at 15. But there is no dispute that if Wiggins swerved within his lane, almost struck the curb on several occasions, braked erratically, and was traveling 30 mph in a 45-mph zone, the stop was lawful. The question was whether Wiggins did those things, and making such findings does not require a particular expertise in Fourth Amendment jurisprudence.

The majority also justifies its rejection of <u>Dusseau</u> in the context of review under section 322.2615 because it views video evidence as "objective and neutral," which "allows it to be viewed by the Article V judicial officer on first-tier certiorari without the need for interpretations of the hearing officer." Majority op. at 16. But as the First District aptly pointed out,

> the quality and context of a video, like that in this case, may not capture or explain the finer nuances that the human eye of a trained (though here relatively inexperienced) DUI officer may perceive. Which explains why the officer said he picked up on some unusual movement of the vehicle or its taillights at a distance ("a good ways back at that point") that the camera could not fully capture because the "video isn't always the best." What the officer believed he saw, unless entirely inconsistent with the video, is to be credited. The

- 33 -

> officer's eyes were multi-tasking: watching the road to safely operate the patrol car while intermittently observing the vehicle's driving pattern. He may have believed the vehicle hit the fog line at the time, but upon review of the video the vehicle did not drift quite that far— but it drifted nonetheless. These types of contextual inconsistencies between the video and the officer's testimony/report are lost by crediting the video to the exclusion of the record as a whole.

Wiggins, 151 So. 3d at 467. "Unlike the circuit court, the hearing officer could evaluate the credibility of the officer and make a determination, for example, that he was truthful in his explanation of what he saw, and what his report said, regarding the vehicle's driving pattern." Id. at 465. Thus, the hearing officer had a superior vantage point in evaluating all of the evidence, including the video. Further, the video—even as interpreted by the circuit court and the majority—does not refute Deputy Saunders' testimony that Wiggins drove 15 mph below the speed limit at 2:10 a.m., braked erratically, and made some erratic motion when his vehicle first came into Deputy Saunders' view.

"[J]ust like any other type of evidence, video is subject to conflicting interpretations." Robinson v. State, 5 N.E.3d 362, 366 (Ind. 2014). For example, in Scott v. Harris, 550 U.S. 372, 380 (2007), Justice Scalia, writing for a majority of the Court, interpreted a video as showing "a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury," while Justice Stevens, in dissent, interpreted the same video as "hardly the stuff of Hollywood" and opined that it did not show "any incidents

that could even be remotely characterized as 'close calls,' " id. at 392. Making a determination of what a video shows is a factual finding that does not require any particular expertise and is therefore entitled to deference by a reviewing court. See, e.g., State v. Cortez, 482 S.W.3d 176, 181 (Tex. App. 2015) (holding that because it was not easily discernable from a video whether defendant's tires touched the fog line, the reviewing court was required to defer to the trial court's interpretation of the events captured on the video), vacated on other grounds, 501 S.W.3d 606, 610 (Tex. Crim. App. 2016). This is especially true when the video evidence is considered in conjunction with other evidence by the lower tribunal. See In re M.K., 114 A.3d 107, 111 n.* (Vt. 2015) (citing cases).

For these reasons, I would approve the well-reasoned opinion of the First District and hold that Dusseau is applicable in the context of first-tier certiorari review under section 322.2615 and that a circuit court applies incorrect law when it reweighs or reevaluates conflicting evidence, rather than simply reviewing the record to determine whether the lower tribunal's decision is supported by competent, substantial evidence. I thus would answer the question certified by the First District in the affirmative. I dissent.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

First District - Case No. 1D13-2471

(Duval County)

David M. Robbins and Susan Helen Cohen of Epstein & Robbins, Jacksonville, Florida,

for Petitioner

Stephen Decatur Hurm, General Counsel, and Jason Helfant, Senior Assistant General Counsel, Department of Highway Safety and Motor Vehicles, Lake Worth, Florida,

for Respondent